Sipsas, P.C.
Ioannis (John) P. Sipsas (IS5579)
31-16 30th Avenue, Suite 202
Astoria, New York 11102
(718) 777-0909
Email: john@sipsaslaw.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

DINOS CONSTANTOURIS, MICHAEL CONSTANTOURIS,
and CONSTANTINOS G. KOTZIAS,

                                        Plaintiffs,

                                                                Civil Action No.


                                                                **Plaintiffs Demand a
                                                                Jury Trial**


        v.



MARFIN POPULAR BANK PUBLIC CO., LTD, f/k/a
MARFIN LAIKI BANK, f/k/a CYPRUS POPULAR BANK CO., LTD,
 f/k/a LAIKI BANK GROUP, NICOS A. PAPHITIS, and
BANK OF CYPRUS PUBLIC COMPANY LIMITED.

                                        Defendants

-------------------------------------------------------------------------x

## COMPLAINT

## I. INTRODUCTION

        1.      Dinos Constantouris, Michael Constantouris and Constantinos G. Kotzias

(the "plaintiffs"), bring this action against Cyprus Popular Bank Company Limited,

formerly known as Marfin Popular Bank Public Company Limited, Marfin Laiki Bank

and Laiki Bank Group, ("Laiki"), currently having its business address and operations

headquartered in Cyprus, to recover damages, caused by Laiki's wrongful conduct in

dealing with loans as it pertains to their deliberate misrepresentation of terms, including,

but not limited to, the variability of certain contractually established fixed interest rates,

and against Nicos A. Paphitis, ("Paphitis"), an officer or agent of Laiki, residing in the

State of New York and Cyprus, to recover damages caused by his wrongful conduct in

dealing with  loans as it pertains to his general underhandedness, in the context of

defining the terms of and providing the loan, and his determined attempt to masquerade

aforementioned interest rate manipulation practices through purposely deceitful actions

and statements during the course of his misleading and uncooperative business

relationship with plaintiffs.

2.      Defendants, as lenders, knowingly in breach of their duties and obligations

to plaintiffs, as borrowers, increased, without any notification, justification or consent,

and against predetermined loan terms established contractually and through

conversations, the interest rate of plaintiffs' loans. Furthermore, defendants misled the

plaintiffs with regards to the real terms of the loan agreements and committed fraud by

grossly understating the inherent risk involved in obtaining financing through a

multicurrency loan facility and, additionally, misrepresenting the mechanism which

determined which currencies would be chosen for payment. Defendants also used various

coercive tactics to have plaintiffs execute amendments to their loan agreements. Such

tactics include, but are not limited to, the foreclosing and selling of the real estate put

forth as collateral in Cyprus. This secured collateral was valued at least two or three times

the amount of the loans obtained from defendants.

2

3.      In disregard of its duties of diligence and care, as lenders, as well as its contractual obligations to plaintiffs, as borrowers, Laiki and Paphitis engaged in currency exchange transactions, using funds from the plaintiffs' credit facilities, which negatively impacted the amount of funds available for withdrawal, increased the interest rates and was, generally, contradictory to the spirit and terms of the original arrangement, all the while misrepresenting this to plaintiffs through the invocation of falsehoods about circumstances beyond their control in an attempt to elude the personal accountability inherent in the range of powers afforded to a lender. Defendants used intimidation and coercive tactics, including the threat of unlawful acquisition of collateralized properties, in violation of applicable laws, to persuade plaintiffs to sign documents that purported to be amendments to the original contacts as a justification to increase interest rates. As a result of such practices, plaintiffs were unable to pay the exorbitant interest rates that were imposed upon them in violation of their contractual obligations. As a result, plaintiffs have been injured in the sum of over $2,500,000 million and are in danger of losing the aforementioned real estate collateral in Cyprus.

4.      Plaintiffs Dinos Constantouris and Michael Constantouris, executed two (2) contracts with Laiki. Defendant Paphatis, as an officer or agent of Laiki, was instrumental in persuading plaintiffs to obtain loans from Laiki at no more than 2%. Such misrepresentations were believed by plaintiffs but, later on, interest rates skyrocketed to about 6% for United States Dollars, Japanese Yen or Euro currencies, without any justification or consent. Specifically, defendant Paphitis aggressively persuaded the plaintiffs, using false promises and pretenses, to obtain very low interest rate multicurrency loans from Laiki, initially denominated in Japanese Yen. Here, plaintiffs

3

were victims of the defendants' deliberately misleading predatory lending tactics, who masqueraded the reality of the situation as a sophisticated multicurrency credit facility that was too complicated to explain.

5.      Plaintiffs Dinos Constantouris, Michael Constantouris executed two loans. The first was dated on or about August 14, 2007, for a sum of $1,600,000 for the purpose of commencing construction at 30-98 21st Street, Astoria, NY. The interest to be charged, for currencies other than Cyprus Pounds (CYP), was 1% plus the LIBOR rate The second loan, dated on or about November 30, 2007, is for the sum of ¥57,000,000 (Fifty-Seven Million Japanese Yen). The interest to be charged, for currencies other than Cyprus Pounds (CYP), was 1% plus the JPY LIBOR rate, which, at relevant times, is about 0.58%. Plaintiffs saw their interest rate skyrocketing in violation of their agreement. Defendants were manipulating plaintiffs' credit facilities by exchanging currencies without their consent, resulting in both less available funds and a higher interest rate than was articulated would be within the range of likelihood.

6.      Plaintiffs Dinos Constantouris, Michael Constantouris obtained from Defendant Laiki about $1,975,000.00 and they have paid in excess of $300,000.00. As a result of astronomically increased interest rates, plaintiffs were not able to continue the construction project in Queens County, New York, and, thus, have suffered monetary losses in a sum exceeding $2,500,000.00.

7.      Plaintiff Kotzias, in 2007 and early 2008, obtained two multicurrency loans. The first loan, with account number ending in 2318, in the sum of CHF 450,000.00 (Four-Hundred Fifty Thousand Swiss Francs), is a seven year multicurrency loan with an interest rate of CHF LIBOR plus 2.50%. This loan had a mortgage over lands in Cyprus

4

owned by plaintiff Kotzias. The second loan, under the account number ending in 4401, in the sum of ¥ 216,000,000 (Two-Hundred Sixteen Million Japanese Yen), had an interest rate of JPY LIBOR plus 2%. Plaintiff Kotzias obtained about $2,200,000.00 and has paid off over $800,000.00. Plaintiffs Kotzias' interest rate increased as well and, under threat of foreclosure of the aforementioned Cyprus real estate properties, he executed subsequent documents which substantially increased the interest rate from LIBOR plus 2% to LIBOR plus 5%. Furthermore, defendant Laiki was involved in the deliberate manipulation of plaintiff Kotzias' loan through currency exchanging resulting in both less available funds and increased interest rates. Additionally, increases of interest on the mortgage were not made known to plaintiff Kotzias. Upon information and belief, such activities were in violation of United States of America laws, rules and regulations and possibly in violation of international law.

## II.    THE PLAINTIFFS

8.      Plaintiffs  Dinos Constantouris, Michael Constantouris are residents of Queens County, State of New York. Plaintiff Kotzias is a resident of the State of New Jersey but also contracts and has business in the State of New York, New York County and Queens County.

## III    THE DEFENDANTS

9.    Cyprus Popular Bank Company Limited, formerly known as Marfin Popular Bank Public Company Limited, Marfin Laiki Bank and Laiki Bank Group, ("Laiki"), the operations of which include but are not limited to branches in Cyprus, Greece, Malta, Russia, Serbia, Ukraine, England, and China (this information was obtained from Laiki's website : http://www.laikibankgroup.com/EN/Pages/Home.aspx)  and, previously, a

5

representative office in New York City at 450 Park Avenue, New York 10022

(surrendered on March 5, 2008, see New York State Department of Financial Services

Weekly Bulletin, March 14, 2008, Section II,

http://www.dfs.ny.gov/reportpub/wb080314.htm;;

http://www.dfs.ny.gov/reportpub/wb080201.htm.;

http://www.dfs.ny.gov/banking/fcbnet2.htm) was chartered in New York State on

January 16, 1998. Defendant Laiki maintains a registered office at 154 Limassol Avenue,

2025 Nicosia, Cyprus. Defendant Laiki, through its offices throughout the world, offer

customers the following services: international banking, domestic banking, investment

banking, private banking, business banking, shipping, treasury services and capital ·

markets. The representative office that Defendant Laiki  maintained in New York City

until March 5, 2008 was licensed under the New York Banking Law §§ b221A-221K.

The New York office was regulated, supervised and examined by the New York State

Banking Department, as it was known at the time (currently known as New York State

Department of Financial Services), and the Board of Governors of the Federal Reserve

System. Furthermore, defendant Laiki, upon information and belief, was regulated by the

Securities Exchange Commission (SEC) and Commodities Futures Trading Commission

(CFTC). Defendant Laiki engaged in financial transactions, involving securities and

commodities trading, without having the required licensing or registration from the

appropriate United States authorities. Defendant Bank of Cyprus Public Company

Limited ("Bank of Cyprus") is named herein as a successor-in-interest of the defendant

Laiki. Recent developments in Cyprus have created a lot of confusion and consolidation

in the banking sector. Specifically, the Bank of Cyprus Group, as of March 25, 2013,

have acquired the insured deposits and majority of assets of Cyprus Popular Bank Public Company Limited, known as Laiki Bank, and will service all customers based on existing terms, see http://www.bankofcyprus.com/en-GB/Start/News/Restructuring-and-Recapitalisation-of-Bank-of-Cyprus/. Bank of Cyprus has operations in Cyprus, Russian, UK, Greece and other countries. It maintains a headquarters at 51 Stassinos Street, Ayia Paraskevi, Strovolos, Nicosia, Cyprus. Upon information and belief, Bank of Cyprus maintains correspondent banking relationships with banks in New York including but not limited to, Deutsche Bank, Barclays Bank PLC, HSBC Bank, N.A., and Citibank, N.A., to allow, inter alia, Bank of Cyprus to engage in United States dollar transactions.

   10. Defendant Paphitis was the chief representative and agent of defendant LAIKI at all relevant times. Defendant Paphitis resides in the State of New York, County of Queens, and upon information and belief, he is an American citizen. Defendant Paphitis made materially fraudulent misrepresentations to the plaintiffs concerning the commercial loans that are in dispute in this action. Defendant Paphitis stated to the plaintiffs that their interest rate will not go over a certain amount under any circumstances. Specifically, defendant Paphitis stated that the margin will not go over 1% for the first 15 years and the interest rate will not exceed over 2%. Defendant Paphitis made the following statements to plaintiffs:

  *"Why are you going to get a construction loan and pay 6-7% interest rate when you get a loan from us and pay less than 2 % in interest?"*

  *"You will pay 1% over the three month Japanese yen libor interest rate which is 0.16%."*

*"The margin is fixed at 1% for 15 years. It is like the prime rate plus 1%. The prime rate goes up and down, but the margin stays the same at 1%."*

Plaintiffs relied upon Paphitis' statements and were not provided with any documentation, clarifying or supporting any verbal assurances made, despite numerous attempts and requests at obtaining them from defendants.

Furthermore, Defendant Paphitis insisted that, because plaintiff Dinos Constantouris was about 58 years old, his son, plaintiff Michael Constantouris must be a party to the loan as well. Defendants made this age-related issue as a prerequisite for the loan despite the fact that Plaintiff Dinos Constantouris had pledged real estate collateral in Cyprus sufficient to cover the amount of the loan. Plaintiff Dinos Constantouris had no other choice but to ask his son to be a co-signor on the loans. Such practices are, upon information and belief, in violation of age discrimination lending practices. Finally, defendant Paphitis conducted financial transactions, including securities and commodities trading, without having the required licensing or registration from the appropriate USA authorities.

IV.    **JURISDICTION**

11.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

12.    This Court has personal jurisdiction over defendants pursuant to the New York Banking Law, §§ 200-b(2)(e) and 221-c, the Federal Reserve Act of 1913, 12 U.S.C. § 632, and N.Y.C.P.L.R. § 301, on the ground that Defendants maintained an office in New York City during the solicitation of the loans. Alternatively, jurisdiction is predicated on N.Y.C.P.L.R. § 302(a)(1).

8

V.    **CLAIMS FOR RELIEF**

**COUNT I**
**BREACH OF CONTRACT**

13.    Plaintiffs repeat, reallege and incorporate, by reference herein, the entirety of the allegations contained in the foregoing paragraphs.

14.    The relationship between the defendants and plaintiffs was contractual in nature. As such, defendants Laiki and Paphitis were required to adhere to an implied duty of good faith and fair dealing.

15.    Defendants failed to adhere to this duty and thus breached their contract with the plaintiffs by raising the interest rate agreed upon .

16.    Defendant used various misrepresentations and coercive methods to implement such interest rates increases. Included in these misrepresentations and methods are the refusal to provide plaintiffs with all relevant documentation relating to the variability of their loans, including currencies exchanged and the various LIBOR rates the bank used in making these determinations.

17.    Defendants, through deliberately manipulative currency trading, imposed much higher interest rates upon plaintiffs and made less funds available in their credit facilities. Thus, defendants breached their contractual obligations to plaintiffs and caused substantial losses to plaintiffs.

18.    As a foreseeable consequence of this breach by defendants Laiki and Paphitis, plaintiffs have suffered substantial harm and damage proximately caused by the wrongful acts of the defendants in an amount to be proven at trial, but not less than $2,500,000.00.

9

## COUNT II
## BREACH OF IMPLIED COVENANT OF
## GOOD FAITH AND FAIR DEALING

19.     Plaintiffs repeat, reallege and incorporate, by reference herein, the entirety of the allegations contained in the foregoing paragraphs.

20.     Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance.

21.     By reason of the facts alleged herein, defendants deprived plaintiffs of receiving benefits, under their agreement to wit the interest rate that was agreed upon.

22.     As a foreseeable consequence of defendants' breach of implied covenant of good faith and fair dealing, plaintiffs have suffered substantial harm and damage proximately caused by the wrongful conduct of the defendants in the amount to be proven at trial, but not less than $2,500,000.00.

## COUNT III
## NEGLIGENCE

23.     Plaintiffs repeat, reallege and incorporate, by reference herein, the entirety of the allegations contained in the foregoing paragraphs.

24. At all times, defendants were under a duty to exercise ordinary care in the handling of plaintiffs' affairs related to the loans and the interest rates. Defendants were involved in currency trading at the detriment of plaintiffs. Defendants' actions are attended by circumstances that indicate fraud or other wrongdoing.

25.     Defendants breached this duty when they allowed for increases of interest rates due to their risky and careless currency trading without articulating, obtaining consent or consulting with plaintiffs as were the terms initially set forth. In disregard of

its duties and obligations, defendants negligently permitted the manipulation of currency

trading that resulted in increasing plaintiffs interest rates, and, ultimately, less available

funds in their credit facilities, in violation of the agreements.

26. Such risky and careless activities have harmed the plaintiffs in an amount to

be determined at trial but not less than $2,500,000.00.

### COUNT IV
### VIOLATION OF NEW YORK GENERAL BUSINESS LAW, SECTION 349
### DECEPTIVE ACTS AND PRACTICES

27. Plaintiffs repeat, reallege and incorporate, by reference herein, the

entirety of the allegations contained in the foregoing paragraphs.

28. New York General Business Law ("GBL") § 349 prohibits deceptive acts

and practices in the conduct of any business, trade or commerce. The defendants' scheme

comprised a means and method by which they perpetrated fraud in different loans within

the American-Cypriot community. This fraud occurred in the conduct of the defendants'

business as a matter of course throughout the lending process. The pattern of fraudulent

misrepresentations that the interest will remain below a certain percentage and the margin

will not increase for 15 years was the status quo and, in fact, the defendants' *modus*

*operandi.*

29. Plaintiffs are "consumers" as defined in GBL § 349.

30. Defendants conducted trade and commerce in New York and elsewhere

within the meaning of GBL § 349.

31. Defendants' acts include making numerous misrepresentations to the

plaintiffs and other members of the Cypriot-American community in the New York metropolitan area that interest rates for loans were less than 2% and that the margin will stay the same at 1% for the next 15 years.

32.    Defendants' statements had the capacity, likelihood and tendency to deceive and confuse consumers.

33.    Defendants' acts materially misled consumers like the plaintiffs.

34.    The deceptive acts and practices of the defendants have directly, foreseeably and proximately harmed the plaintiffs. Damages include monetary damages, legal protection intended for plaintiffs and public and possible loss of real estate property interests in Cyprus.

## COUNT V
## UNJUST ENRICHMENT

35.    Plaintiffs repeat, reallege and incorporate, by reference herein, the entirety of the allegations contained in the foregoing paragraphs.

36.    By fraudulently manipulating the interest rate that plaintiffs had to pay and by coercive means against plaintiffs, defendants wrongfully took property and property interest belonging to plaintiffs.

37.    Defendants acted deliberately and knowingly and derived substantial financial benefits from the fraudulent acts.

38.    It would be inequitable for defendants to retain these benefits without restoring plaintiffs to wholeness because the benefits were acquired through deception and conduct in violation of state and federal laws.

39.    Under the principles of equity and good conscience, defendants should not

be permitted to retain the benefits and revenue they acquired through unlawful conduct. All funds, revenues and benefits received or to be received by defendants in relation to plaintiffs' loans were unjustly obtained and rightfully belong to plaintiffs.

## COUNT VI
## BREACH OF IMPLIED CONTRACT

40.     Plaintiffs repeat, reallege and incorporate, by reference herein, the entirety of the allegations contained in the foregoing paragraphs.

41.     Defendants and plaintiffs implicitly agreed that plaintiffs would not be charged an excessive or unconscionable amount of interest, to wit, no more than a certain percentage for the life of the contract and that the margin will not exceed 1% for the first 15 years.

42.     Defendants breached the implied agreement with plaintiffs.

43.     Based upon the above, a judgment should be entered declaring that defendants have breached an implied agreement not to change the margin rate  of 1% and, to the extent appropriate, awarding damages for said breach as to be determined at trial.

## COUNT VII
## FRAUD IN VIOLATION OF SECTION 10(b) OF THE EXHANGE ACT AND RULE 10b-5 THEREUNDER

44.     Plaintiffs repeat, reallege and incorporate, by reference Herein, the entirety of the allegations contained in the foregoing paragraphs.

45.     Defendants directly or indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails in connection with the purchase or sale of securities, knowingly, willfully or recklessly: (a) employed devices, schemes or

artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading, and (c) engaged in acts, practices and courses of business which have operated, and are now operating, and will operate, as a fraud upon the exchanging of currencies in the context of aforementioned multicurrency loans.

46.    By reason of the foregoing, defendants Laiki and Paphitis, directly or indirectly, violated, and are reasonably likely to continue to violate, unless enjoined , Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

## COUNT VIII
## AIDING AND ABETTING VIOLATIONS OF SECTION 10(b) OF THE EXHANGE ACT AND RULE 10b-5 THEREUNDER
### (As to Paphitis)

47.    Plaintiffs repeat, reallege and incorporate, by reference herein, the entirety of the allegations contained in the foregoing paragraphs.

48.    Defendant Laiki, directly or indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails in connection with the purchase or sale of securities, knowingly, willfully and recklessly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statement made, in light of the circumstances under which they were made, not misleading and (c) engaged in acts, practices and courses of business which have operated, and are now operating, and will operate as a fraud upon the exchanging of currencies in the context of aforementioned multicurrency loans.

49.    Defendant Paphitis, directly and indirectly, had a general awareness that he was part of an overall activity that was improper or illegal and knowingly, or acting extremely recklessly, provided substantial assistance to violations by Laiki of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

50.    By reason of the foregoing, defendant Paphitis aided and abetted Laiki's violations, and is reasonably likely to again aid and abet Laiki's violations, unless enjoined. (Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.)

## COUNT IX
## VIOLATION OF SECTION 4b(a) (A)-( C) OF THE COMMODITY EXCHANGE ACT , 7 U.S.C. § 6b(A)(2)(A)-(C)

51.  Plaintiffs repeat, reallege and incorporate, by reference herein, the entirety of the allegations contained in the foregoing paragraphs.

52.  Defendants cheated or defrauded, or attempted to cheat or defraud, customers and willingly made false statements, by, among other things: (a) making material misrepresentations and omissions regarding currency trading activities that affected the interest rate of plaintiffs' loans and (b) preparing false statements or no statements at all regarding currency exchanges that affected both the interest rate of plaintiffs' loans and the amount of funds available in the credit facilities, in violation of Section 4b(a)(2)(A)-(C) of the Commodity Exchange Act ("Act") , 7 U.S.C.§ 6b(a)(2)(A)-(C), for conduct before July 16, 2011, and Section 4b(a)(2)(A)-(C) of the Act, as amended, to be codified at 7 U.S.C. §  6b(a)(2)(A)-(C), for conduct on or after July 16, 2011.

53.  The foregoing acts, omissions and failures of defendant Paphitis occurred

15

within the scope of his agency, employment or office with defendant Laiki; therefore, defendant Laiki is liable for these acts, omissions and failures pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B)(2006) and Regulation 1.2 , 17 C.F.R. §1.2 (2012).

54.     Defendant Paphitis controlled defendant Laiki, directly or indirectly, and did not act in good faith, or, knowingly induced, directly or indirectly, defendant Laiki's conduct alleged in this count. Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Defendnat Paphitis is liable for defendant Laiki's violations of Section 4(b)(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6(b)(a)(2)(A)-(C) for conduct before July 16, 2011 , and Section 4b(a)(2)(A)-(C) of the Act, as amended, to be codified at 7 U.S.C. § 6(b)(a)(2)(A)-(C), for conduct on or after July 16, 2011.

55.     Defendants engaged in acts and practices described above knowingly or with reckless disregard for the truth.

56.     Each misrepresentation or omission of material fact, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Section 4(b)(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6(b)(a)(2)(A)-(C) for conduct before July 16, 2011 , and Section 4b(a)(2)(A)-(C) of the Act, as amended, to be codified at 7 U.S.C. § 6(b)(a)(2)(A)-(C), for conduct on or after July 16, 2011.

## COUNT X
## FRAUD IN CONNECTION WITH OFF-EXCHANGE FOREX TRANSACTIONS
### Violations of Regulation 5.2(b), 17 C.F.R.§ 5.2(b)

57.     Plaintiffs repeat, reallege and incorporate, by reference herein, the entirety of the allegations contained in the foregoing paragraphs.

58.     Regulation 5.2(b), 17 C.F.R. § 5.2(b)(2012), provides that

*It shall be unlawful for any person, by use of the mails or by any means or Instrumentality of interstate commerce, directly or indirectly, in or in connection with any retail forex transaction:*
*(1) To cheat or defraud or attempt to cheat or defraud any person;*
*(2) Willfully to make or cause to be made to any person any false report or statement or cause to be entered for any person any false record; or*
*(3) Willfully to deceive or attempt to deceive any person by any means whatsoever.*

59.     Defendants, using means of interstate commerce, defrauded or attempted to defraud customers like the plaintiffs and willingly deceived, or attempted to deceive, the plaintiffs by, among other things (a) making material misrepresentations and omissions regarding currency trading activities that affected the interest rate of plaintiffs' loans and (b) preparing false statements, or no statements at all, regarding currency exchanges that affected the interest rate of plaintiffs' loans and the availability of funds in the credit facilities, in violation of Regulation 5.2(b), 17 C.F.R. § 5.2(b).

60.     The foregoing acts, omissions and failures of defendant Paphitis occurred within the scope of his agency, employment or office with defendant Laiki. Therefore, defendant Laiki is  liable for these acts, omissions and failures pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B)(2006) and Regulation 1.2 , 17 C.F.R. §1.2 (2012).

61.     Defendant Paphitis controlled defendant Laiki, directly or indirectly, and did not act in good faith, or, knowingly induced, directly or indirectly, defendant Laiki's conduct alleged in this count. Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Defendant Paphitis is liable for defendant Laiki's violations of Regulation 5.2(b), 17 C.F.R. § 5.2(b).

62.    Defendants engaged in acts and practices described above knowingly, or with reckless disregard for the truth.

63.    Each misrepresentation or omission of material fact, including, but not limited to, those specifically alleged herein, is alleged as a separate and distinct violation of Regulation 5.2(b), 17 C.F.R. § 5.2(b).

## COUNT XI
## VIOLATION OF 15 U.S.C. 1691 ( EQUAL CREDIT OPPORTUNITY ACT) SECTION 701(a)(1).

64.    Plaintiffs repeat, reallege and incorporate, by reference herein, the entirety of the allegations contained in the foregoing paragraphs.

65.    Defendants refused to extend credit to plaintiff Dinos Constantouris because he was, at the time, 58 years old. Defendants demanded that his son, plaintiff Michael Constantouris, be included as a co-borrower as a prerequisite for the extension of aforementioned credit facilities. Defendants made clear to plaintiff Dinos Constantouris that he could not obtain the loan by himself because he was too old, irrespective of the fact that plaintiff Dinos Constantouris was qualified and, additionally, had put forth as collateral, or lien, real estate properties in Cyprus.

66.    Such practices violated section 701(a)(1) of the 15 U.S.C. 1691 (Equal Credit Opportunity Act, referred hereafter as the "Act") and sections 202.4,202.6(b)(1), 202.6(b)(2) of Regulation B, 12 C.F.R. §§ 202.4, 202.6(b)(1), 202.6(b)(2).

## COUNT XII
## COMMON LAW NEGLIGENT MISREPRESENTATION

67.    Plaintiffs repeat, reallege and incorporate, by reference herein, the entirety of the allegations contained in the foregoing paragraphs.

68.    Since 2007 until present, defendants made statements to plaintiffs

18

concerning the loan terms and interest rates that were false. Defendants had a unique, exclusive, and special knowledge about the loans and the interest rates unlawfully charged to the plaintiffs. However, plaintiffs had no access to files or information concerning the loans and interest rate determination and defendants had refused to submit such information even upon demand by plaintiffs. Plaintiffs, therefore, reasonably relied upon the knowledge and the implied and express representations made by defendants. Moreover, defendants knew that plaintiffs were acting in reliance on such information regarding the varying interest rates and currency exchanges.

69. Based upon their unique, exclusive, and special knowledge and expertise about the loans, and the varying interest rates and currency exchanges, defendants had a duty to provide complete, accurate, timely information about the loans and the relevant interest rate changes and currency exchanges. Defendants breached that duty by, instead, making untrue statements to plaintiffs of material facts about the loans or otherwise misrepresenting to the plaintiffs material facts about how the interest rate was determined or calculated.

70. Defendants failed to correct any misrepresentation about the determination of the interest rate charged. As a result, plaintiffs were damaged in an amount to be determined at trial as a direct, proximate and foreseeable result of the misrepresentations.

## COUNT XIII
## COMMON LAW FRAUD

71. Plaintiffs repeat, reallege and incorporate, by reference herein, the entirety of the allegations contained in the foregoing paragraphs.

72 This is a claim for common law fraud against all defendants including

19

Bank of Cyprus as the successor of Laiki and all of its predecessor entities.

73      The material representations set forth above were fraudulent, false and misleadingly misrepresented and omitted material statements of fact concerning currency exchanges that affected the interest rate charged. These misrepresentations also include statements made by the defendants that certain elements, like margin rates, of the issued loans would remain unchanged for 15 years. From 2007 to the present day, defendants made false statements concerning fees charged, currency exchanges and interest rate calculations. In addition, based on these false statements and misrepresentations, defendant withdrew funds from plaintiffs' accounts without any authorization or justification. The representations on which plaintiffs relied were directly communicated to them by the defendants and their agents, employees, associates and officers. Defendants knew, or were reckless in not knowing, that their representations and omissions were false, or misleading, at the time they were made. Defendants made the misleading statements for the purposes of inducing plaintiffs to obtain the loans and for the institutional benefit of, later on, charging higher interest rates.

74.     Plaintiffs justifiably relied on false representations and misleading omissions of defendants.

75.     Had the plaintiffs known the true facts regarding these credit facilities and the questionable and misleading practices of defendants, they would not have agreed to obtain the loans.

76.     The misconduct of defendants was intentional and wanton. The immediate victims of the fraud were American-Cypriots with real estate properties in Cyprus, like the plaintiffs.

20

77.     As a result of the foregoing, plaintiffs have suffered damages according to proof. In the alternative, plaintiffs hereby demands rescission of the agreements.

78.     Punitive damages are therefore warranted for the actions of defendants in order to punish, deter them from future misconduct, and protect the public.

## COUNT IVX
## AIDING AND ABETTING FRAUD

79.     Plaintiffs repeat, reallege and incorporate, by reference herein, the entirety of the allegations contained in the foregoing paragraphs.

80.     This is a claim for aiding and abetting fraud against defendant PAPHITIS.

81.     Defendant PAPHITIS was scouting and searching the American-Cypriot communities for American-Cypriots , like the plaintiffs, to induce them to obtain "cheap loans" from LAIKI, even he knew or should have known that such loans were underwritten to shobby standards with the sole intent of skyrocketing the interest rates charged later on. Defendant PAPHITIS substantially assisted in the origination of loans which is the subject of this action.

82.     Defendant PAPHITIS made fraudulent and untrue statements of material fact and omitted to state material facts regarding the true quality of such loans and the questionable practice of LAIKI concerning interest rates charged intertwined with aggressive and questionable  currency trading practices.

83.     Defendant PAPHITIS had unique access to the loan files and was aware of LAIKI's questionable practices and  was aware that the representations and omissions of LAIKI were fraudulent. The central role of PAPHITIS was to search for victims like the plaintiffs and persuade them to obtain the loans which are the subject of this action.

21

84.     As a result, plaintiffs have been damaged in an amount to be determined at trial.

## COUNT  XV
## SUCCESSOR LIABILITY
## (Against BANK OF CYPRUS)

85.     Plaintiffs repeat, reallege and incorporate, by reference herein, the entirety of the allegations contained in the foregoing paragraphs.

86.     Defendant Bank of Cyprus is the successor to defendant LAIKI, pursuant to a merger or buy-out. Defendant Bank of Cyprus is liable for Defendants LAIKI and PAPHITIS wrong doing, in its entirety, under common law, because LAIKI merged and consolidated with Bank of Cyprus. Furthermore, Bank of Cyprus has acquired all of Laiki's assets. Because Bank of Cyprus has expressly or implied assumed LAIKI's  tort liabilities , and because Bank of Cyprus is a mere continuation of LAIKI, then this action is brought against Bank of Cyprus both in its own capacity and as  successor to LAIKI.


## VI. RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully request that the Court as authorized by pertinent law and pursuant to its own equity powers enter:

a.      A judgment for plaintiffs on counts I, II,II, IV, V , VI, XII,XIII,IVX, XV of this complaint in an amount to be determined at trial but not less than $2,500,000;

b.      The relief sought by plaintiffs in each count, together with interest, costs and attorneys' fees;

c.    An Order finding that defendants violated the Acts in counts VII, VIII, IX, X; and XI.

d.    An Order of permanent injunction prohibiting defendants, as well any successors, from engaging in conduct that violates the Acts as depicted in counts VII through XI;

e.    An Order requiring Defendants, as well as any successors of defendants, to disgorge to any office appointed or directed by the Court all benefits received from acts or practices that violated the Acts and Regulations, as described herein, including post-judgment interest;

f.    An Order directing defendants, as well as any successors of defendants, to rescind, pursuant to such procedures as the Court may order, all contracts, agreements, whether implied or express, entered into between, with or among the defendants and plaintiffs who funds were received by defendants as result of the acts and practices which constituted violations of Acts and Regulations, described herein;

g.    An Order requiring defendants to make full restitution to plaintiffs whose funds defendants received, from acts or practices which constituted violations of Acts and Regulations, described herein;

h.    An Order requiring defendants to pay civil monetary penalties, to be assessed by the Court, for the violations of acts or regulations described herein;

i.    An Order for Punitive damages;

j.    An Order for rescission of the loan agreements; and

23

    k.      Enter an Order providing such other and further relief as this Court may

deem necessary and appropriate under the circumstances.

## VII. JURY TRIAL DEMANDED

    Pursuant to Federal Rules of Civil Procedure 38( c) , Plaintiffs hereby demand a

trial by jury on all issues triable by jury.

                        Respectfully submitted

                        Ioannis (John) P. Sipsas (IS5579)
                        Sipsas, P.C.
                        31-16 30th Avenue, Suite 202
                        Astoria, New York 11102
                        718-777-0909
                        Email: john@sipsaslaw.com
                        **Attorney for Plaintiffs**

Dated: April 2, 2013